Rodney Dean LEHMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–86–0350–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 26, 1987.

Discretionary Review Granted
July 8, 1987.

Clinard J. Hanby, Haynes & Fullenweider, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Cathleen Herasimchuk, Harris County Asst. Dist. Atty., Houston, for appellee.

Before DUNN, WARREN and HOYT, JJ.

## OPINION

DUNN, Justice.

A jury convicted the appellant of theft, and assessed punishment at two years imprisonment.

The appellant, a Houston police officer, was indicted under Tex.Penal Code Ann. § 31.03 (Vernon 1974), and pursuant to Tex.Penal Code Ann. § 31.09, the indictment alleged a single scheme or continuing course of conduct involving six separate incidents.

On October 23, 1984, the appellant entered and searched, without a warrant, the offices of the Maxi Clean Washateria located on Lucille Street in Houston. Rupert Richards, a part-owner of the washateria, was arrested when the appellant's partner, Officer Allee, found a small baggie of marihuana in an office vacuum cleaner. As Richards was being escorted out to the patrol car, he asked his girl friend to take care of his briefcase containing $9,470 in U.S. currency, and 1,800 in Jamaican dollars, which was lying beside the office chair. The appellant immediately asked to see inside the briefcase, so Richards unlocked it for him. The appellant then stuffed more money taken from Richards' desk drawer into the briefcase, and took it down to the police station. According to the appellant, he "maintained care, custody and control of that money from the time it was received until it was placed in the property room." At the police station, Officer Allee stacked the money into piles according to denomination, but she never counted it. The appellant entered the amount into the computer terminal, and then delivered the money to the property room. The dollar amount entered into the computer, and the actual amount delivered to the property room was only $6,234.63. Although Richards complained about his missing money that night at the jail, only $6,234.63 was ever returned to him.

On March 1, 1985, Joseph Martinez Ruiz was riding his bicycle home from Lovic's Drug Store on Liberty Road in Houston when he was stopped, searched, and arrested by the appellant. Ruiz was taken to jail for four Class C bicycle violations that were dismissed in court the next day. When Ruiz was first stopped, the appellant searched him, pulled $250.00 out of Ruiz' pocket, looked at it, then stuffed his hand back into Ruiz' pocket. At that time, Ruiz was unable to check how much money the appellant had put back in his pocket because he was handcuffed, but when he arrived at the jail, Ruiz discovered that he had only $150.00 left.

On April 2, 1985, Jairo Valencia Gonzalez was walking down Liberty Road in Houston when he was stopped, searched, and arrested by the appellant. The appellant pulled $235.00 out of one of Gonzalez' pockets during the search, and put that money into his own pocket. When Gonzalez asked for his money back, the appellant pulled out $5.00 from Gonzalez' other pocket, stuffed it into the prisoner's mouth, and told him to shut up. Gonzalez was taken to jail for hitchhiking, and the appellant never returned Gonzalez' $235.00.

On May 2, 1985, Placido Angulo and two friends were eating at a fast food restaurant on Jensen Drive in Houston. Just as they were leaving, the appellant and another officer entered. Words were exchanged, and Angulo and his friends then sat down until the appellant finished eating. The appellant then took the three men outside, searched them, and made them get into the patrol car. Angulo had $85.00 in his pocket at that time. The appellant drove the three men to a motel, grabbed Angulo out of the car, and took him up to the motel room. Once there, the appellant searched Angulo again, grabbed him by the neck, and beat him. As soon as the appellant left, and Angulo's friend came into the room, Angulo looked for his money in his pocket, but it was all gone. He told his friend, "Archibald, I was robbed of the $85.00 that I have."

On May 7, 1985, Carnell Blake was watching television with several other people at a bar on Lyons Avenue in Houston when the appellant entered, told everyone to get against the wall, and searched them all. Blake had $535.00 in his pocket at the time the appellant searched him. Blake was then arrested for gambling. The appellant, alone in the patrol car with Blake, asked his prisoner if he still had his money with him. When Blake said "Yes," the appellant took the money, counted it, and then wrapped it around his finger. The appellant kept the money until he gave $313.00 of it to the property officer at the booking window. When Blake realized that over $200.00 was missing, he complained, and refused to sign the property slip. The appellant then grabbed Blake by the throat, threw him down, and slapped him four or five times. The appellant never returned Blake's money.

On May 14, 1985, the Internal Affairs Department of the Houston Police Department conducted a covert investigation of the appellant. Walberto Mina agreed to pose as an arrested suspect of cocaine possession, and was given $300.00 cash. He was taken to the intersection of Liberty and Gregg by CID Officer Larry Doreck. Doreck counted the money, put it in the left pocket of Mina's pants, handcuffed him, and waited for the appellant to transport his "prisoner." Doreck's supervisor, Lieutenant Young, was parked nearby to maintain surveillance. When the appellant arrived, both Doreck and Young saw him search Mina and pull out the $300.00. Young saw the appellant put the $300.00 into his own pocket. The appellant and his partner, Officer Ontiveros, then transported Mina down to the narcotics division, where Doreck soon met them. As soon as the appellant and Ontiveros left, Doreck searched Mina but could not find the $300.00. While he was searching Mina, the appellant came back, looked at what Doreck was doing, and quickly went back to the elevator area. When Doreck finished his search of Mina, he called Young on the radio, and then went out to the elevator area where he accidentally met the appellant coming out of the elevator. With a quivering voice and shaking hands, the appellant handed Doreck the missing $300.00, saying that his partner had forgotten to give him some money that was on the prisoner. The appellant's partner testified that he never searched Mina, never saw any property other than the supposed cocaine, and that the appellant never told him of any other property.

In point of error two, the appellant argues that the trial court erred in instructing the jury that they could convict based upon a finding that the appellant committed some, but not all, of the acts charged in the indictment. This argument is without merit.

The indictment charged the appellant with theft from six separate individuals on six separate occasions. No allegations were made concerning the amount of money stolen from each individual. Instead, pursuant to Tex.Penal Code Ann. § 31.09, it was alleged that "the total value of the property was over $750 and under $20,000." The court charged the jury as follows:

> If you find from the evidence beyond a reasonable doubt that the Defendant is guilty of the offense of theft of property, namely, money, but you do not find beyond a reasonable doubt or you have a reasonable doubt that the Defendant committed the offense of theft from each and every individual previously named on or about the dates stated in the paragraphs, you may still be warranted in finding the Defendant guilty if you believe beyond a reasonable doubt that the Defendant committed *one or more* of these thefts, if any, from the above named individuals, pursuant to one scheme and continuing course of conduct, *so long as the value of the money stolen, if any were, was more than Seven Hundred Fifty Dollars and less than Twenty Thousand Dollars.*

(Emphasis added.)

Defense counsel objected to this charge on the ground that the jury was required to find beyond a reasonable doubt that the appellant committed all of the alleged thefts before it could convict.

The appellant argues that when an indictment alleges the theft of items of nonuniform value, and only the aggregate value rather than the individual value of each item is alleged, then the State has the burden to prove that all the items were stolen. As authority for this proposition, the appellant cites *Thompson v. State*, 43 Tex. 268 (1875); *Anderson v. State*, 166 Tex.Crim. 337, 314 S.W.2d 603 (1958); *Pitcock v. State*, 367 S.W.2d 864 (Tex.Crim. App.1963); *Pena v. State*, 422 S.W.2d 937 (Tex.Crim.App.1967); and *Ketchum v. State*, 707 S.W.2d 718 (Tex.App.—Texarkana 1986, no pet.). These cases are all distinguishable from the case before us.

*Ketchum* is inapplicable to the facts before us, because in *Ketchum*, there was only one act of theft where several items were stolen. The court specifically stated that § 31.09 did not apply. *Ketchum*, 707 S.W.2d at 719.

The line of cases through *Pena* were correctly distinguished by the court of criminal appeals in a case very similar to the one before us. *Wiley v. State*, 632 S.W.2d 746 (Tex.Crim.App.1982). In *Wiley*, the indictment alleged that Wiley, "knowing that they were stolen, appropriated two shotguns, two rifles, one pistol, and three gun cases, all of the value over two hundred dollars and under ten thousand dollars." *Id.* at 747. The appellant argued that because the State failed to prove that the appellant appropriated the pistol, and thus failed to prove that he had appropriated all of the property alleged, it failed to prove its case. The court of criminal appeals rejected this argument, stating that it was sufficient that the State proved the value of each item, and the proof showed that the total value of the items was over $200. Further, the jury was authorized to convict only if it found the value of the appropriated items was over $200; therefore, the jury could not convict the appellant for the appropriation of only one item if that item was valued at less than $200. *Id.* at 748.

Similarly, in the case before us, the jury was authorized to convict the appellant only if the value of the money stolen was more than $750 and less than $20,000. This limitation precludes the possibility that the jury convicted the appellant of one or more thefts in which the total amount involved was less than $750.

Point of error two is overruled.

In point of error one, the appellant challenges the sufficiency of the evidence with regard to the Rupert Richards theft, the Joseph Martinez Ruiz theft, and the Walberto Mina theft. The appellant does not challenge the sufficiency of the evidence with regard to the Gonzalez, Angulo, or Blake thefts. The amounts of these latter three thefts were $235, $85, and $220 respectively, or an aggregate amount of $540. Because this amount is less than $750, we must examine the sufficiency of the evidence of the other alleged thefts to the extent necessary to reach an aggregate amount of $750.

The standard for judging sufficiency questions is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Texas has adopted this standard for both direct and circumstantial evidence cases. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim. App.1986); *Wilson v. State*, 654 S.W.2d 465, 471 (Tex.Crim.App.1983) (op. on reh'g). However, in applying this standard of review in circumstantial evidence cases, an "exclusion of outstanding reasonable hypotheses" analysis should not be abandoned. *Wilson*, 654 S.W.2d at 471.

[A] A conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the defendant ... and it must be borne in mind that every circumstantial evidence case must be tested by its own facts to determine the sufficiency of the evidence to support the conviction.

*Johnson v. State*, 673 S.W.2d 190, 195 (Tex. Crim.App.1984) (citations omitted). Further, the jury is free to accept the State's version of the facts and reject the appel-

lant's version. *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex.Crim.App.1981).

"If the *State's* evidence supports an inference other than a finding of the essential elements of the crime, then no trier of fact could rationally find the accused guilty beyond a reasonable doubt—and this is true irrespective of the character of the evidence." *Wilson,* 654 S.W.2d at 472 (emphasis added).

■ We now apply these principles to the appellant's argument that the evidence is insufficient to establish the amount of money in Richards' briefcase, and to show that the appellant removed part of this money. Richards testified that on October 23, 1984, "I had $9,470 I had already counted in my briefcase." He testified further that more money and receipts from the washateria machines and from the convenience store were in the office desk drawer, and that the appellant stuffed this money into the briefcase. The appellant admitted doing this. On cross-examination, Richards was asked if he was sure that there wasn't $9,471 or $8,034 in the briefcase instead of $9,470, and Richards stated that he was sure. The appellant argues that no one else verified the amount of money in the briefcase, and that there was no receipt, note, or written document to validate Richards' testimony. The appellant has cited no cases, and our research reveals none, that require documentary evidence rather than testimony to prove value. The jury was free to believe Richards' testimony. *Sharp v. State,* 707 S.W.2d 611 at 614 (Tex.Crim.App.1986).

The appellant also argues that the evidence was insufficient to prove that the appellant removed the missing money. Because the State's evidence showing that the appellant stole the money is circumstantial, the State's evidence must preclude all other reasonable hypotheses. Richards testified that he counted the $9,470 that morning in his office, and immediately after counting it, he locked the briefcase and put it beside his office chair. He unlocked the briefcase for the appellant, and the appellant then took the unlocked briefcase and kept it. Allee, the appellant's partner, testified that

when the appellant and she returned to the homicide division to complete the reports relating to Richards' arrest, she left the briefcase in a cubicle in the homicide division with appellant. She went downstairs to get a soft drink and some candy, leaving the appellant alone with the money. Allee returned, stacked the money into piles according to denomination, and advised the appellant how many bills of each denomination were in the briefcase. The appellant made the computer entries, and Allee never actually totaled the money or verified the entries. The cash in various denominations, amounting to $6,234.63, was placed in the police property room. The appellant testified that he maintained care, custody, and control of the money from the time he took it from Richards, until the time that he placed it in the property room. The appellant also admitted that if there were a discrepancy between the amount of money checked into the property room, and the amount of money removed from the property room, that fact would have been indicated in appellant's exhibit 24–a, the Houston Police Department evidence and property invoice. This exhibit did not indicate that any money was missing.

Based upon the alleged course of conduct, a rational trier of fact could have found, beyond a reasonable doubt, that the appellant took Richards' money, no other reasonable hypothesis having been raised.

Because the evidence shows that at least $3,235 was stolen, we have no need to address the appellant's sufficiency points with respect to the thefts from Ruiz and Mina. The State was only required to prove that the appellant stole a total of more than $750 from one or more of the persons alleged in the six paragraphs, and this theft alone is sufficient to support the jury's general verdict. However, in further support of our overruling of the appellant's first point of error, we will address the appellant's sufficiency claims with regards to the Ruiz and Mina thefts.

■ As detailed above, Ruiz testified that he had $250 in his pocket at the time that the appellant stopped and searched him. The appellant argues that "the State

did not show where Mr. Ruiz obtained the money, when he obtained it, or when he last counted it." The appellant cites no authority for the argument that the testimony of Ruiz alone is insufficient for the jury to determine that Ruiz had $250 in his pocket. Further, Ruiz testified that as soon as he arrived at the jail, he discovered that he only had $150. The jury was free to accept Ruiz' testimony, and reject that of the appellant. *Penagraph v. State,* 623 S.W.2d 341 at 343 (Tex.Cr.App.1981). This evidence is sufficient to support the jury's finding that the appellant stole Ruiz' money.

The appellant argues that the evidence is insufficient to show that Mina "owned" the $300 given to him by Doreck for the purposes of the Internal Affairs Department investigation. This argument is without merit.

A person is the "owner" of property "for purposes of the theft statute, if, *at the time of the commission of the offense,* he had the greater right to possession than did the accused." *Freeman v. State,* 707 S.W.2d 597, 603 (Tex.Crim.App.1986) (emphasis in original); *see also Jones v. State,* 714 S.W.2d 138 (Tex.App.—Houston [1st Dist.] 1986, no pet.) (employee, who did not know how to open cash register, had a greater right of possession to the money than did the robber); Tex.Penal Code Ann. § 1.07(a)(24).

In the case before us, Doreck, acting pursuant to an Internal Affairs Department investigation, placed $300 in Mina's pocket. Mina was also participating in the investigation. The appellant's removal of the money, and his retention of the $100, was not accomplished pursuant to the investigation. Compared to the appellant, Mina had the greater right of possession, and was, therefore, the "owner" of the money.

Finally, the appellant's argument that the State failed to show that the appellant lacked the effective consent of Mina is rebutted by the appellant's testimony. On five separate occasions, the appellant stated that Mina did not give him permission or consent to take the money from Mina's

pocket and put it into his own. The evidence is sufficient to support the jury's finding that the appellant stole the money from Mina.

Point of error one is overruled.

In point of error three, the appellant argues that the trial court erred in instructing the jury regarding the effects of the parole law as directed by Tex.Code Crim.P. Ann. art. 37.07 § 4 (Vernon Supp.1987). This argument is without merit.

The trial court charged the jury in part as follows:

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the sentence imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served plus any good conduct time earned equals one-third of the sentence imposed. Eligibility for parole does not guarantee that parole will be granted. It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the

manner in which the parole law may be applied to this particular defendant.

The appellant objected to this portion of the charge on the grounds that it violated the appellant's rights under the due process clause, and his right to equal protection under the law. This objection was overruled.

The appellant cites as authority for his argument *Rose v. State*, No. 05–85–01136–CR (Tex.App.—Dallas, Aug. 11, 1986, opinion withdrawn Sept. 12, 1986). However, the Dallas Court of Appeals, sitting en banc, reversed *Rose*, and held that the jury charge on parole did not violate the due process clause. *Rose v. State*, 724 S.W.2d 832 (Tex.App.—Dallas 1986); *see also Clark v. State*, 721 S.W.2d 424 (Tex.App.—Houston [1st Dist.] 1986, pet. pending).

The appellant's third point of error is overruled.

In point of error four, the appellant argues that the trial court erred in failing to declare a mistrial after the prosecution argued that the appellant should have been charged with robbery. This alleged error was not preserved for review, because the appellant did not make a proper and timely objection.

The State's jury argument during the punishment phase, that the appellant now objects to, is as follows:

> It is not the 17–year–old defendant who doesn't know any better and trying to feed his family, but it is someone who is cloaked with a gun and a badge, and quite frankly, if anybody else had done what he had done, we would be calling it robbery. When you take someone's property away from them by force in some of these cases, that's robbery.

Defense counsel did not object to this argument at the time that it was made. Instead, after the jury began deliberations, defense counsel moved for a mistrial, "because of the prosecutor's misstatements in the argument in that he brought in armed robbery." Where a timely instruction would have cured the harm, a timely objection is required. *Hall v. State*, 662 S.W.2d

37, 41 (Tex.App.—Houston [1st Dist.] 1983, pet. ref'd).

Point of error four is overruled.

The judgment of the trial court is affirmed.