PD-1340-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/17/2015 6:40:26 PM
Accepted 4/20/2015 8:17:15 AM
ABEL ACOSTA
CLERK

No. **PD-1340-14**

# IN THE COURT OF CRIMINAL APPEALS

NO.  14-13-00375-CR
In the Court of Appeals for the Fourteenth District of Texas at Houston

No. 1253665
In the 174th District Court of Harris County, Texas

KEVIN L. KENT
Appellant

V.

THE STATE OF TEXAS
Appellee

Appellant's Brief on Discretionary Review

Filed by James F. Pons
TXSBN 24041707
10900 N.W. Fwy., Ste. 230
Houston, TX 77092
Ph (832) 372 8138
Fax (713)869 8330
Email: jpons_78221@yahoo.com

On behalf of Appellant:
Kevin L. Kent

Oral Argument Permitted

## Table of Contents

Table of Contents
……………………………………………………………………………..i

Index of Authorities
……………………………………………………………………………iii

Statement Regarding Oral Argument
……………………………………………………………………….v

Statement of Facts
……………………………………………………………………………….1

Summary Argument
…………………………………………………………………………...10

Argument
…………………………………………………………………………...11

I.
The erroneous jury charge in this case failed to instruct the jurors that they needed to unanimously agree about the elements of §31.09 and used disjunctive language to list the particular owners allowing for a less than unanimous verdict
…………………………………………………………………………...11

A. Appellee's reference to the appellant's requested instruction at trial is not helpful.
…………………………………………………………………………...11

B. The request for unanimity on the elements of owner and that owner's associated property are consistent with indictment and the language of §31.03.
…………………………………………………………………………...12

C. Lehman and Murchison do not require a different holding.
…………………………………………………………………………...13

II.
The court below held that the gravamen of § 31.09, the owner and their particular property, not each individual transaction, represents an individual unit of prosecution demanding unanimity
…………………………………………………………………………...15

A.  Appellee argues that the lower court erred by holding that each transaction demands unanimity.
…………………………………………………………………………...15

B.  Appellee fails to point to an identifiable error in lower court's legislative intent analysis.
…………………………………………………………………………...16

C.  The Court's prior decisions support the finding that §31.09's gravamen includes the owner and their associated property.
…………………………………………………………………………...19

D.  The Court's prior decisions also support finding that the gravamen of the owner and their associated property are separate units of prosecution requiring juror unanimity.
…………………………………………………………………………...21

E.  The jury in this case delivered a non-unanimous verdict.
…………………………………………………………………………...23

F.  Appellee asks the Court to create public policy without legal or factual support.
…………………………………………………………………………...24

III.
The lower court's finding of some harm is consistent with this Court's finding of egregious harm
…………………………………………………………………………...25

A.  Trial counsel for State misstated law from beginning of trial to end of trial.
…………………………………………………………………………...26

B. The evidence at trial was contested.
……………………………………………………………………………...27

C. Appellee's reliance on distant boilerplate language should be rejected.
……………………………………………………………………………...29

D. The evidence at trial was of a complicated commercial real-estate transaction.
……………………………………………………………………………...30

Prayer for Relief
……………………………………………………………………………...33

Certificate of Compliance
……………………………………………………………………………...33

## Index of Authorities

1. Case Law

Byrd v. State, 337 S.W.3d 242 (Tex. Crim. App. 2011)
…………………………………………………………...…12, 20, 24

Francis v. State, 36 S.W.3d 121, 123 (Tex. Crim. App. 2000)(en banc)
…………………………………………….......11, 14, 20, 21, 22, 23, 25

Francis v. State, 53 S.W.3d 685 (Tex. App.—Fort Worth 2001)
……………………………………………………………………...25

Garza v. State, 344 S.W.3d 409 (Tex. Crim. App. 2011)
……………………………………………………...7, 16, 20, 22, 23, 24

Johnson v. State, 364 S.W.3d 292, 297 (Tex. Crim. App. 2012)
……………………………………………………………………...20

Jourdan v. State, 428 S.W.3d 86, 96 (Tex. Crim. App. 2014)
…………………………………………………………………17, 18

iii

Kent v. State, 447 S.W.3d 408, 411 (Tex. App.—Houston [14th Dist.] 2014, pet. granted)
………………………………………………………………….......
2, 4, 5, 11, 12, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30

Lehman v. State, 792 S.W.2d 82, 83-84(Tex. Crim. App. 1990)(en banc)
…………………………………………………………………...13, 14,15

Lehman v. State, 727 S.W.2d 656, 657-59(Tex. App.—Houston [1st Dist.] 1987, pet. grant'd)
………………………………………………………….................13

Murchison v. State, 93 S.W.3d 239, 257-60 (Tex. App.—Houston [14th Dist.]1987, pet. ref'd)
………………………………………………………………….14, 15

Ngo v. State, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005)
……………………………………………………14, 21, 22, 23, 26, 27, 29, 30

Richardson v. United States, 526 U.S. 813 (1999)
…………………………………………………………………………18, 28

Schad v. Arizona, 501 U.S. 624 (1991)
………………………………………………………………………….7

State v. Weaver, 982 S.W.2d 892, 894 (Tex. Crim. App. 1998)
…………………………………………………………………………16, 17

Stone v State, 703 S.W.2d 652, 654 (Tex. Crim. App. 1986)
……………………………………………………………………….................11

Stuhler v. State, 218 S.W. 3d 706, 717 (Tex. Crim. App. 2007)
………………………………………………………………….21, 22, 23, 26

2. Statutory authority

TEX. PENAL CODE § 31.03 (West 2010)
…………………………………………………………………………...12

iv

Tᴇx. Pᴇɴᴀʟ Cᴏᴅᴇ § 31.09 (West 2010) ……………………………………………………………14, 15, 16, 17, 23

<u>Statement Regarding Oral Argument</u>

This Court has permitted oral argument.

## Statement of Facts

Appellant was a mortgage broker. R.R. V. 8 pgs. 9-12. Appellant was the registered owner and operator of Orlando Mortgage and Distinguished Properties. R.R. V. 5 pg. 32-34, R.R. V. 7 pg. 126. Prior to 2003, Maralyn Cochran and the Appellant conducted commercial real-estate transactions involving homes for the intellectually disabled. R.R. V. 5 pgs. 27-28, 143, R.R. V. 8 pgs. 17-18. Trial counsel for the State referred to these types of facilities as intermediate care facilities for the mentally retarded (ICF/MR). R.R. V. 5 pg. 15. In 2003, Ms. Cochran, who previously owned an ICF/MR, was acting as a commercial real-estate broker. R.R. V. 5 pgs. 17-18, 131.

The complainants, Larry and JoAnn Aniol own an ICF/MR named River Gardens in New Braunfles Texas. R.R. V. 5 pgs. 15, 35. Only JoAnn Aniol testified at trial. Larry Aniol did not testify at trial.

The Aniols attempted to sell River Gardens in 2002. R.R. V. 5 pg. 16. In the spring of 2002, Ms. Cochran offered to help the Aniols obtain financing for the sale. R.R. V. 5 pgs. 17-18, 131. To arrange funding for the $19.5 million dollar commercial real-estate transaction Ms. Cochran introduced the Aniols to the appellant. R.R. V. 5 pg. 19.

Barbara Allen and her daughter Tamara Allen own and operate Casa Linda, an ICF/MR for girls located in Brownsville Texas. R.R. V. 6 pgs. 35-37. Barbara

1

Allen testified that she is the administrator of casa Linda. R.R. V. 6 pg. 35. Tamara Allen did not testify at trial. In 2003, the Allens intended on expanding their business by acquiring River Gardens. R.R. V. 6 pg. 36. Ms. Cochran introduced the Aniols to the Allens as prospective buyers for River Gardens. R.R. V. 6 pg. 37-39, 45, 48.

Ultimately, Ms. Cochran was paid a $150,000 brokerage fee for the introduction of the above stated parties. R.R. V. 5 pg. 28. The evidence at trial showed that after this introduction the Aniols and the Allens, on separate occasions for different reasons, began making deposits with the appellant in order to further this commercial real-estate transaction. See State Ex. 64, State Ex. 65.

Specifically, JoAnn Aniol testified that in May of 2003 she transferred $200,000 to the Allens intending to help the Allens "buy down points" and obtain a better interest rate on the loan for the purchase. R.R. V. 5 pgs. 43-44, R.R. V. 6 pgs. 55-56. Barbra Allen and the Aniols signed a "short term loan" agreement to memorialize this transfer. Kent v. State, 447 S.W.3d 408, 411 (Tex. App.— Houston [14th Dist.] 2014, pet. granted). Ms. Allen subsequently transferred the $200,000 to an Orlando Mortgage account. R.R. V. 5 pgs. 24-25, 46, 48-49, 86-87, R.R. V. 6 pg. 57. She claimed the appellant influenced her to do so claiming the amount would "buy down points" and lower the interest rate on the purchase. R.R. V. 6 pgs. 55-57.

2

In August of 2003 the Aniols deposited $369,528 with Lawyers Title in order to show their good faith in the transaction and encourage Texas One Credit Union to make the loan on the transaction. R.R. V. 5 pgs. 21, 50, 133-36.

Ms. Aniol testified she made these transfers relying on phone calls from the appellant and faxes from Orlando Mortgage. R.R. V. 5 pg. 42. She testified that the appellant represented to her that his Father was on the board of the Texas One Credit Union. Id. She further explained that the appellant represented that his father could influence the approval of the loan. Id.

A witness for the credit union previously known as Texas One Credit testified that Texas One did not have sufficient funds to finance the large loans described by the witnesses. R.R. V. 6 pgs. 27-28. The appellant's father testified he had no knowledge of any real-estate transaction with his son and that he was a floor repair-man/sales-man. R.R. V. 6 pgs. 11-12.

Ms. Aniol testified that she relied on the appellant's representations that her deposits were going into an escrow account. R.R. V. 5 pg. 46. She also testified that the Orlando Mortgage website gave her a sense of security in the transaction. R.R. V. 5 pgs. 24-25.

Ms. Aniol became frustrated with the back and forth of a commercial real-estate deal and consulted with her brother, which she described as an investor. R.R. V. 5 pgs. 49-51, 63-64, 92-93. She subsequently demanded the appellant

3

return her deposits.  Id.  In September of 2003, the appellant retuned the $369,528 deposit.  R.R. V. 5 pgs. 51-52, 133.

Ms. Aniol testified that in October of 2003 the appellant approached her attempting to revitalize the River Gardens sale.  R.R. V. 5 pgs. 52, 66, 73-74, State Ex. 48.  Because they felt everything was already in place and there was a prospective buyer in the Allens, the Aniols re-deposited the amounts with the Appellant in a Washington Mutual business account.  R.R. V. 5 pgs. 52-54, 56, 66, 135-36.  The Aniols re-deposited the funds despite the fact that the lending institution was unknown and blacked out in the loan commitment paperwork.  R.R. V. 5 pgs. 58-60, 66-67, 95, 136-37.

Ms. Aniol testified that the appellant assured her of the validity of the transaction by faxing her documents purporting to be legitimate loan commitments to the Allens.  R.R. V. 5 pgs. 77, 81-84, State Ex. 46, State Ex. 48.  Ms. Aniol also testified that the appellant provided her assurances that the funds continued to be held in an escrow account.  R.R. V. 5 pgs. 77, 81-84, State Ex. 46, State Ex. 48.

Ms. Aniol admitted to the work done by the appellant to further the River Gardens sale.  Kent, 447 S.W.3d at 413.  She acknowledged "constant phone calls" with the appellant during the pendency of the River Gardens transaction.  Id.  Ms. Aniol testified to having daily conversations and daily fax communication with the appellant during this time.  Id.  She admitted to sending the appellant thousands of

4

documents and receiving 900 faxes from the appellant. Id. While acknowledging these types of documents were typical in underwriting she admitted that she was not sure of "how appellant was going to be paid." Id. Ms. Aniol also testified that she "had lawyers reviewing the transaction beginning in the fall of 2004." Id.

From February 2004 to November 2005 the Aniols made more deposits to "buy points down" or obtain a favorable position with the credit union. R.R. V. 5 pgs. 80, 88. Other deposits for debt service or appraisals were also made in order to close the River Gardens deal. R.R. V. 5 pg. 116. In particular, in December of 2004 the Aniols loaned Barbra Allen another $150,000 to deposit with the appellant with the understanding the money was to be deposited in escrow to influence the ultimate sale. Kent, 447 S.W.3d at 412.

Ultimately, the River Gardens deal did not close. R.R. V. 5 pg. 122. In November 2005 the Aniols withdrew from the deal and sent the appellant a demand letter for their total deposits of $775,000. Id., R.R. V. 7 pg. 136. In December of 2005 Jo Ann Anilos and Barbra Alllen signed a general release absolving the appellant from civil liability in regards to the River Gardens sale. Defendant's Ex. 1 and 2, R.R. V. 19 evidence volume pages 84, 85, Kent, 447 S.W.3d at 423-24.

After the Aniols withdrew from the River Gardens deal the Allens continued to work with the appellant. R.R. V. 6 pgs. 80- 81. Ms. Allen testified she believed

the Aniol's deposits were returned by the appellant and her previous deposits were still secured. R.R. V. 6 pgs. 82-83. After the River Gardens deal fell through the Allens changed their focus to the acquisition of hotel properties. R.R. V. 6 pg. 81.

From 2005 to 2008 the Allens continued to make deposits with the appellant for commercial real-estate investments separate from the River Gardens deal. R.R. V. 6 pgs. 82-84. Ms. Allen testified that the Appellant put her in contact with less than ten prospective hotel sellers. R.R. V. 6 pgs. 91-92. Ms. Allen testified that she eventually deposited a total of $762,000 with the appellant for the various real-estate deals. R.R. V. 6 pg. 84, R.R. V. 7 pg. 136.

Ms. Allen testified she never meet the appellant and only communicated with him by telephone and fax. R.R. V. 6 pg. 40, 46, 47-48. She testified she relied on the website information and the appellant's statement that his father held an influential position with a financial institution. R.R. V. 6 pgs. 41, 48-49, 109.

Evidence showed that from 2003 to 2005 cash withdraws were made directly from the Orlando Mortgage Washington Mutual account. R.R. V. 6 pgs. 41, 48-49, 109, R.R. V. 7 pgs. 102-03, 134-36, State Ex. 3A, State Ex. 3B, State Ex. 3C.

Evidence also showed that from 2003 to 2005 funds from the Orlando Mortgage Washington Mutual Account were spent on the purchase of personal items and services. R.R. V. 6 pgs. 41, 48-49, 109, R.R. V. 7 pgs. 126-34.

The indictment against the appellant tracked the language of the general theft statute and was a single paragraph that combined four separate complainants conjunctively with the word "and." See R.R. V.4 pg. 109.

During the jury charge conference trial counsel for the appellant objected to the disjunctive nature of the first application paragraph in the jury charge. R.R. V. 9 pgs. 49-52. Specifically, trial counsel explained that the jury charge violated the appellant's right to Due Process under the United States Constitution and the Texas Constitution because the application paragraphs did not require the jury to "agree unanimously that the state proved beyond a reasonable doubt each element of the offense." R.R. V. 9 pg. 49. Trial counsel for the appellant also provided case law supporting the objection. Id. Garza v. State, 344 S.W.3d 409, 414 (Tex. Crim. App. 2011), Schad v. Arizona, 501 U.S. 624 (1991).

Trial counsel for the appellant then specifically requested that the charge delineate each separate alleged criminal episode in the disjunctive in order to obtain an unanimous verdict on each act. R.R. V. 9 pg. 51. Trial counsel proposed that the application paragraph list out all the alleged fraudulent deposits and referred to State's Exhibit 64 and 65 as guidance. Id.

Trial counsel for the State countered that delineating the separate and distinct thefts was "improper" and not "required by the code." R.R. V. 9 pg. 52. Counsel for the State at trial then stated that the State could prove its case if the

7

Jury believed that $200,000 or more was stolen from "one of these complainants or conjunctively one or more of the complainants during this time period." Id. This statement was consistent with the State's instructions at jury selection.

Trial counsel for State instructed the jury during jury selection that each owner and their particular property were not elemental. R.R. V. 4 pgs. 13-14. Trial counsel for the State explained that the disjunctive pleading was more like a decision on the manner and means of the offense not requiring unanimity. "I don't have to prove that each one of these victims individually was stolen from. … let's say juror 3 believes $200,000 was stolen form Barbara Allen . . . and juror 4 believes over $200,000 was stolen from Joann and Larry Aniol. And they don't have to agree on that. They have to agree the total amount was over $200,000 stolen form one of the complainants or a combination." Id. This instruction allowed six jurors to find the appellant appropriated form the Aniols and six to find he appropriated form the Allens resulting in a less than unanimous verdict on all the elements of the offense.

The jury in this case received a disjunctive application paragraph allowing them to convict the Appellant of theft if they found from the evidence that the Appellant, ". . .did . . .appropriate . . .money . . . owned by Barbara Allen or Tamara Allen or Larry Aniol or Joann Aniol with the intent to deprive Barbara

Allen or Tamara Allen or Larry Aniol or JoAnn Aniol ". R.R. V. 9 pg. 52; C.R. V. 1 pg. 606-607.

In closing argument, trial counsel for the State relied on this disjunctive paragraph and explained to the jury that as long they found that "one complainant was out over $ 200,000" they could render a guilty verdict. R.R. V. 9 pgs. 60-61. Further, trial counsel for the State argued that if the jurors agreed with the defense and found that the "general release" signed by the parties absolved the appellant of culpability in reference to the River Gardens deal, they could rely on the fact that the Allen's "hotel" transactions were not included in that release. Kent, 447 S.W.3d 423-24.

Subsequently a jury found the appellant guilty of first degree aggregate theft of over $200,000. (C.R. V. 1 pg. 612). The Honorable Judge Guerrero sentenced appellant to 60 years Texas Department of Corrections. (C.R. V. 1 pg. 615). The Honorable Judge Guerrero signed the appellant's judgment on April 24, 2013. (C.R. V. 1 pg. 615). The judgment included an order of restitution to the complaints in the amount of $975,000. Id. Notice of Appeal was timely filed on April 24, 2013. (C.R. V. 1 pgs. 621-22).

The court of appeals for fourteenth district found the application paragraph was erroneous and caused the appellant harm. Consequently the court reversed the judgment and remanded to the district court for retrial.

9

## Summary of Argument

Each theft represents a distinct unit of prosecution under §31.09. This unit of prosecution is comprised of the gravamen of the owner and their associated property. Although the amounts can be aggregated among the various complainants to determine the degree of offense, there still must be a unanimous verdict as to each separate e unit of prosecution. Unanimity is required when the elements are separate and distinct acts constituting the commission of the offense.

The error in the application paragraph in this matter was two-fold. First, the paragraph failed to instruct the jury that a unanimous decision on the owner and their property was mandated. Combined with this omission, the application paragraph in this case listed the complaints in the disjunctive allowing for the jury to return a less than unanimous verdict on substantive elements.

Some harm is present in this record because six jurors could have found that the Appellant appropriated money from one complainant and six could have found that he appropriated from another; resulting in a less than unanimous verdict. Further, the record exhibits that trial counsel for the State empowered the jury to deliver a non-unanimous verdict with improper instructions from the beginning of

10

trial to the end. The record shows that the evidence was contested and that boilerplate language only exacerbated the harm.

**Argument**

I.
The erroneous jury charge in this case failed to instruct the jurors that they needed to unanimously agree about the elements of §31.09 and used disjunctive language to list the particular owners allowing for a less than unanimous verdict

A. Appellee's reference to the appellant's requested instruction at trial is not helpful.

Error was preserved in this matter. Kent, 447 S.W.3d at 421-22. Appellee references trial counsel's requested instruction. Appellee's Brief on Discretionary Review, pgs. 2, 15, 18, 19, 23. Appellee describes trial counsel for the appellant's request as contrary to Texas law. Id. 15-16. However, this request is not dispositive to the issue presented for review. Trial counsel for the appellant's request is relevant to error preservation, which has already been decided. Kent, 447 S.W.3d 421-22. The Court of Criminal Appeals in Francis explained that although the appellant's request created an erroneous charge, the erroneous request was not the dispositive issue. Francis v. State, 36 S.W.3d 121, 123 (Tex. Crim. App. 2000)(en banc). The court reflected on the decision in Stone v State, 703 S.W.2d 652, 654 (Tex. Crim. App. 1986), and reiterated that the jury charge objection need only be "sufficient to call the trial court's attention to the omission

11

in the court's charge." <u>Francis</u>, 36 S.W.3d at 123.  The Court further found that the objection and request by counsel at trial in <u>Francis</u> "apprised [the Court of] appellant's objection to omissions in the charge." <u>Id</u>.

The requested application paragraph is relevant to error preservation and is not relevant §31.09's requirement of juror unanimity on the element of ownership and the particular property associated with that owner.  <u>Byrd v. State</u>, 337 S.W.3d 242, 250-51 (Tex. Crim. App. 2011), <u>Kent</u>, 447 S.W.3d at 418.  Instead, the application paragraph error addressed by the court below was: (1) the absence of language informing the jury of the need to be unanimous combined with (2) the disjunctive list of the complainants that allowed for a less than unanimous verdict. <u>Kent</u>, 447 S.W.3d at 421.

B.    The request for unanimity on the elements of owner and that owner's associated property are consistent with indictment and the language of §31.03.

Appellee also claims that trial counsel for the appellant's request varied form the indictment.  Appellee's Brief on Discretionary Review, pgs. 2, 14, 16-17.  As pointed out by the court below, the indictment actually tracked the language of §31.03, the underlying theft statute.  <u>Kent</u>, 447 S.W.3d at 417.   The language of §31.03 was also present in the submitted instruction.  A natural consequence of this language in the indictment was that the requested instruction include the gravamen of each offense.  <u>See</u> <u>Byrd</u>, 337 S.W. 3d at 250-51(gravamen of §31.03 is owner and that owner's particular property).

12

More importantly, trial counsel for the appellant requested the inclusion of conjunctive language in the charge, as opposed to the disjunctive language that was used. The issue presented below was the erroneous combination of an absence of a unanimity instruction on elements and a disjunctive list of complainants allowing for a less than unanimous verdict. Kent, 447 S.W.3d at 421.

C. Lehman and Murchison do not require a different holding.

Like this case, Lehman dealt with specific language in the charge. Lehman v. State, 792 S.W.2d 82, 83-84(Tex. Crim. App. 1990)(en banc). However, the issue under review in Lehman is distinguishable from the issue at bar. The appellant in Lehman was a convicted police officer accused of six different thefts from six different individuals he investigated. Lehman v. State, 727 S.W.2d 656, 657-59(Tex. App.—Houston [1st Dist.] 1987, pet. grant'd). The objection at trial in Lehman focused on an instruction that allowed the jury to convict if it believed beyond a reasonable doubt that appellant committed ". . . some, but not all . . ." of the alleged thefts. Lehman, 792 S.W.2d at 83. The charge allowed conviction ". . . as long as the jury believed beyond a reasonable doubt that [he] committed 'one or more' of the thefts." Id. Trial counsel in Lehman argued that the jury should be required to find that all six of the alleged thefts were proven beyond a reasonable doubt before it could convict. Lehman, 727 S.W. 2d at 658.

13

Unlike the "some, but not all" paragraph under attack in <u>Lehman</u>, the application paragraph in the case at bar is disjunctive. This disjunctive nature allows for a non-unanimous split verdict. Unlike trial counsel in <u>Lehman</u>, trial counsel for the appellant argued that the jury was required to be unanimous as to at least one of the complainants and related acts of theft. R.R. V. 9 pg. 51.

Appellee's reliance on <u>Murchison v. State</u>, 93 S.W.3d 239, 257-60 (Tex. App.—Houston [14th Dist.]1987, pet. ref'd) is also misplaced. <u>Murchison</u> dealt with a prosecution under the Texas Securities Act. <u>Id</u>. Although the Securities Act, like §31.09, allows aggregation for specific purposes, the relevant issue in <u>Murchison</u> did not focus on the similarities of the Securities Act and § 31.09. Instead, the appellants in <u>Murchison</u> argued that the jury should have been required to unanimously agree that the appellants intentionally failed to disclose at least one of the five Material Facts listed in the jury charge. <u>Id</u>.

The contrast between the instruction in <u>Murchison</u> and the instruction in the case at bar exhibits the difference between mere manner and means and separate distinct acts requiring juror unanimity. The court in <u>Murchison</u> held that the failure to disclose one of the five Material Facts were alternative manner and means of proving the same offense. <u>Id</u>. at 258-59. The case at bar presents two separate distinct complainants involved in at least two separate and distinct transactions. Because theses separate acts and complainants are considered

14

elemental, unanimity as to one of the complainants and or acts is constitutionally mandated. <u>See</u>, <u>Francis</u>, 36 S.W.3d at 121, <u>Ngo v. State</u>, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005).

The court below found that "<u>Murchison's</u> suggestion that <u>Lehman</u> addressed the issue of jury unanimity was dictum . . ." <u>Kent</u>, 447 S.W.3d at 421. <u>Lehman</u> narrowly addressed whether the State was required to prove all of the underlying thefts alleged in the indictment. <u>Id</u>. at 420. "[…]<u>Lehman</u> did not address whether jurors would have to unanimously agree on the . . ." particular owner and their associated property. <u>Id</u>. Further, as pointed out by the court below the State did not allege any particular manner or means in this matter. The <u>Murchsion</u> opinion may have been helpful if for example the appellant argued that the jury had to unanimously agree that the appellant appropriated money through deception or creating a false impression. <u>Id</u>. However, this was not the objection reviewed below. <u>Id</u>.

II.

<u>The court below held that the gravamen of § 31.09, the owner and their particular property, not each individual transaction, represents an individual unit of prosecution demanding unanimity</u>

A. Appellee argues that the lower court erred by holding that each transaction demands unanimity.

Appellee focuses attention on the lower court's holding that each criminal transaction requires unanimity. Appellee's Brief on Discretionary Review, pgs. 14, 16, 18. This was not the holding below.

Instead, the court below found that §31.09 subsumed the gravamen of its underlying statute, §31.03, and consequently assumed the necessity of juror unanimity as to each owner and their associated property. After an analysis of §31.09's legislative intent the lower court found these two objects created an individual unit of prosecution under §31.03, and in turn §31.09, demanding unanimity as to each.

B. Appellee fails to point to an identifiable error in lower court's legislative intent analysis.

"The State does not contend that the Legislature intended Section 31.09 to do away with the practice of requiring unanimity for the two gravamina of theft." Kent, 447 S.W.3d at 418. The appellee does not apply the grammar analysis used for legislative intent questions. Id. at 414-15, 416-17. Instead, appellee focuses on prior cases that allow for aggregation for the purposes of " . . . of severance, jurisdiction, punishment and limitations … [and] venue." State v. Weaver, 982 S.W.2d 892, 894 (Tex. Crim. App. 1998). Appellee extends this line of cases without applying the correct legal test. Appellees Brief on Discretionary Review at pgs. 20, 25.

The Court in Weaver and later in Garza did not expand this list to include the elements of each distinct owner and their property. Weaver, 982 S.W.2d at 894, Garza, 344 S.W.3d at 414. In fact, the entirety of both opinions establishes the elemental nature of each separate act and complainant by stating that each individual theft is elemental. Weaver, 982 S.W.2d at 893, Garza, S.W.3d at 414.

When establishing the elements of a statute the legal test for legislative intent is the common grammar test. Kent, 447 S.W.3d at 414-15. Section 31.09's adverbial phrase, "in violation of this chapter", creates a distinct unit of prosecution demanding juror unanimity. Id. at 417.

Appellee discredits this analysis by pointing out that the exception to the general rule of not making adverbial phrases elemental is applied. Appellees Brief on Discretionary Review at pg. 20, Kent, 447 S.W.3d at 417. However, like the Court in Jourdan v. State, 428 S.W.3d 86, 96 (Tex. Crim. App. 2014), the court below applied this exception because §31.09's odd linguistic arrangement made the adverbial phrase "in violation of this chapter" elemental.

In fact, the court of appeals identified that the construction of Texas Penal Code §31.09 presented an uncommon situation. Kent, 447 S.W.3d at 416. However, after a thorough application of the eight grade grammar test to the plain text of the statute, the court reasoned that the exception to the rule should be applied and an adverbial phrase in this instance should be interpreted as elemental

17

in nature. Id. at 416. A review of the lower court's opinion shows that a reasonable product of the statute's odd construction in this instance is the application of an exception to the rule of statutory interpretation. Id., see also Jourdan, 428 S.W.3d at 96.

The appellee's claim that unanimity as to each particular transaction is required by the lower court's opinion disregards the opinion. Appellee's Brief on Discretionary Review, pgs. 14, 16, 18. The court of appeals does not state that unanimity is required as to each transaction. Instead, the court explains that because §31.09 requires the court to look at other sections of Chapter 31, it is likely that the legislature intended to include the requirement of unanimity for the two gravamina of simple theft: the property and the owner. Kent, 447 S.W.3d at 417. The appellee does not dispute this specific holding.

Further, the lower court's reliance on Richardson v. United States, 526 U.S. 813, 817 (1999) is expected given that Richardson is on-point. The Supreme Court in Richardson reviewed a similar statute and applied similar legal principles. Kent, 447 S.W.3d at 418-19. The appellee's brief claims Richardson is distinguishable because the statute reviewed by the Supreme Court aggregated a "series of violations" as opposed to §31.09's singular "in violation" language. Appellee's Brief on Discretionary Review, pgs. 20-21.

Not only does this argument disregard <u>Richardson</u> being on-point, but it also disregards another important aspect of the <u>Richardson</u> analysis. The lower court relied on <u>Richardson</u> because like §31.09, the statute in <u>Richardson</u> was a "pseudo-enhancement statute" allowing the aggregation of amounts to determine the grade of the offense. <u>Kent</u>, 447 S.W.3d at 418. Following <u>Richardson</u>, the lower court reasonably concluded that not requiring unanimity as to the underlying thefts owner and particular property ". . . would impose punishment on a defendant for the underlying thefts without a unanimous jury having found beyond a reasonable doubt that the defendant committed those thefts." <u>Id</u>. The appellee's brief on discretionary review does not dispute this conclusion.

The lower court also supported this legislative intent finding by asserting that the legislature has the ability to explicitly except certain actions from the unanimity requirement. <u>Kent</u>, 447 S.W.3d at 419. Although the appellee attempts to argue that one should not infer that the 63rd Legislature possessed the same exception making ability of the 80th or 81st Legislature, this argument misses the legal import of the lower court's analysis. Appellee's Brief on Discretionary Review, pgs. 21-22. The point is that unlike statutes that explicitly except manner and means from the unanimity requirement, §31.09 does not contain a similar direction. <u>Kent</u>, 447 S.W.3d at 419.

C. The Court's prior decisions support the finding that §31.09's gravamen includes the owner and their associated property.

19

This Court answered the Appellee's grounds for review in an analogous context. Appellee's Brief on Discretionary Review, pgs. 4, 23. In Byrd, 337 S.W.3d at 250-51, the Court explained that the two prong gravamen of theft is (1) the owner and (2) the property appropriated. The Court used this analysis to find that the State's evidence in Byrd was insufficient to prove that the defendant appropriated property from the named complainant. Id. at 257. The Court, citing Byrd, reiterated these two elements of theft under §31.03, in a variance objection context, in Johnson v. State, 364 S.W.3d 292, 297 (Tex. Crim. App. 2012). As the court below noted, a variance analysis is helpful because the conclusion usually provides a recitation of all the elements of the offense. Kent, 447 S.W.3d at 415 n. 4.

Similarly, in Garza the key issue on appeal was whether the special owner that testified at trial satisfied the elemental requirement of proof of ownership, despite the fact that the State's proffered witness did not work as an agent for the entity during the entire time frame of the offense. Garza, 344 S.W.3d at 412-14. The Garza Court referred to the lower court's conclusion that the witness satisfied the ownership element, ". . . because the State does not have to prove each individual theft in an aggregate theft case, it is likewise not required to prove that the special owner was an employee of the corporation during the time of each individual theft." Id. at 413. The Court of Criminal Appeals explicitly rejected

20

this reasoning reiterating the rule that ". . . [e]ach individual theft is an element of the aggregated theft described by §31.09." Id. at 414. This statement confirms the elemental nature of each distinct theft and each distinct complainant and their associated property. Kent, 447 S.W.3d at 419. The court in Garza approved of the special owner because there was only a single entity being represented by the agent. Garza, 344 S.W.3d at 414

D. The Court's prior decisions also support finding that the gravamen of the owner and their associated property are separate units of prosecution requiring juror unanimity.

§31.03 and §31.09's combination of owner and associated property represent individual units of prosecution demanding juror unanimity. Francis v. State, 36 S.W.3d at 121, Ngo, 175 S.W.3d at 744, Stuhler v. State, 218 S.W. 3d 706, 717 (Tex. Crim. App. 2007).

In Francis the Court found the application paragraph erroneous because the jury was not required to agree between two separate and discrete theories of indecency. Francis, 36 S.W.3d at 124-25. Specifically, the jury was not required to unanimously agree whether the offense was committed by touching the breast versus touching the genitals of the victim. Id. at 125. The Court of Criminal Appeals pointed out that this was problematic because the evidence at trial showed that the acts occurred on different dates. See id. at 124-25.

21

The credit card abuse prosecution in Ngo also involved application paragraph error. Ngo, 175 S.W.3d at 745-46. The Court of Criminal Appeals found error because the jury was not required to agree among three theories of the offense that occurred on separate and discrete occasions. Id. at 746. Specifically, the jury was not required to agree if the appellant was guilty of stealing a credit card, or receiving a stolen credit card, or presenting the card with the intent to obtain a benefit fraudulently. Id. at 745.

Stuhler dealt with an injury to child prosecution. Stuhler, 218 S.W. 3d at 708. The application paragraph in that case allowed conviction if the jury found either that the appellant in that case, " . . . caused serious bodily injury, . . . caused . . . serious mental deficiency, or impairment or injury." Id. at 717. Because the Stuhler court categorized injury to a child as a result oriented offense it found the jury had to agree unanimously to all the elements constituting the offense, including the result. Id. at 718-19. Consequently, it found the disjunctive charge in that particular case authorized a less than unanimous verdict. Id.

The rationale linking the above cases is that each of the separate and distinct theories of the commission of offense occurred at "separate and discrete times from the others." Stuhler, 218 S.W. 3d at 717. The above stated litany of cases hold that unanimity is required when a jury needs to make findings on a separate

22

and discrete events that constitute the commission of the offense.  Id., Francis, 36 S.W.3d at 125, Ngo, 175 S.W.3d at 746.

E.  The jury in this case delivered a non-unanimous verdict.

The lack of instruction as to the necessity of juror unanimity on elements of owner and their particular property combined with a disjunctive list of the complainants allowed for a less than unanimous verdict in this matter.  Kent, 447 S.W.3d at.  This Court should apply the same analysis used in Francis, Ngo , and Stuhler when reviewing the application paragraph in this case.  Like the statutes reviewed in the litany of cases cited above the aggregate theft statute in this case contains by implication a separate unit of prosecution creating a substantive element of the offense.  See TEX. PENAL CODE § 31.09; Garza, 344 S.W.3d at 414, Kent, 447 S.W.3d at 417.  Consequently, the aggregate theft statute requires unanimity as to each separate and discrete owner and their particular property constituting the commission of an offense.  Stuhler, 218 S.W. 3d at 717.

Like the application paragraphs in litany cited above, the disjunctive application paragraph in this case does not allow the jury to unanimously agree on separate acts that constitute the commission of the offense.  The evidence at trial showed that the aggregate theft was compromised of separate independent deposits from at least two different complaints.  R.R. V. 9 pg. 51, State Ex. 64, State Ex. 65. However, the disjunctive nature of the application paragraph at bar allowed for a

split verdict; where six jurors could have found that the appellant appropriated money from the Allens and six could have found that the appellant appropriated money from Aniols, resulting in a less than unanimous verdict. Francis, 36 S.W.3d at 125, Ngo, 175 S.W.3d at 748.

As stated above, each separate owner and their property compromising the aggregate is an element of aggregate theft. Byrd, 337 S.W.3d at 250-51, Garza, 344 S.W.3d at 414, Kent, 447 S.W.3d at 419. Consequently, this Court can follow that reasoning and find that the similarly disjunctive application paragraph in the case at bar allowed for a less than unanimous verdict on a substantive element.

F. Appellee asks the Court to create public policy without legal or factual support.

Appellee petitions this court to legislate from bench claiming the lower court's opinion would make prosecutions under §31.09 more laborious for the State. Appellee's Brief on Discretionary Review, pgs. 18-19, 22. However, appellee does not support this assertion with legal or factual authority. Appellee further speculates that the lower court's opinion will burden the State with the task of proving numerous, distinct, and various transactions. Id. at 22. However, this is an inaccurate summation of the opinion below. Instead, the opinion below requires juror unanimity for the two elements of (1) the owner and (2) the property appropriated from that owner. Kent, 447 S.W.3d at 419.

Appellee further claims that the lower court's opinion will allow mischief on the part of defense counsel, who appellee claims will now purposely burden the charge conference with numerous requests for the inclusion of every transaction evidenced at trial. Appellee's Brief on Discretionary Review, pgs. 18-19. Appellee claims that application of the lower court's opinion would allow for mischievous defense counsel to spin the facts and cause confusion for the jury with the inclusion of numerous and various transactions in the charge. Id. However, appellee presents no legal authority or factual record reference to support this argument. This also is an inaccurate summation of the opinion below. Instead, the opinion below requires juror unanimity for the two gravamen of (1) the owner and (2) the property appropriated from that owner. Kent, 447 S.W.3d at 419.

## III.
<u>The lower court's finding of some harm is consistent with this Court's finding of egregious harm</u>

Like the prosecutions in <u>Francis</u>, <u>Ngo</u>, and <u>Stuhler</u>, the application paragraph in this case combined distinct allegations into one disjunctive application paragraph allowing for a less than unanimous verdict. Harm from jury instruction error is present when jurors are capable of returning a less than unanimous verdict on different offenses. <u>Francis v. State</u>, 53 S.W.3d 685 (Tex. App.—Fort Worth

25

2001). This analysis is confirmed by the decisions in <u>Ngo</u> and <u>Stuhler</u>, where similar disjunctive instruction language resulted in egregious harm. <u>Ngo</u>, 175 S.W.3d at 745-46, <u>Stuhler v. State</u>, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007). This Court can follow this litany of cases and find some harm resulted from the use of an analogous application paragraph.

A. Trial counsel for State misstated law from beginning of trial to end of trial.

The absence of juror unanimity is more likely in this matter because, like trial counsel for State in <u>Ngo</u>, <u>Stuhler</u>, and <u>Francis</u>, trial counsel for the State in this case improperly instructed the jury during jury selection and closing argument. <u>Kent</u>, 447 S.W.3d at 422-23. During jury selection trial counsel for the State instructed the venire panel that each individual complainant and their associated property were not elemental. R.R. V. 4 pgs. 13-14. Trial counsel for the State explained that the disjunctive pleading was more like a decision on the manner and means of the offense that did not require unanimity.

> I don't have to prove that each one of these victims individually was stolen from. … let's say juror 3 believes $200,000 was stolen form Barbara Allen . . . and juror 4 believes over $200,000 was stolen from Joann and Larry Aniol. And they don't have to agree on that. They have to agree the total amount was over $200,000 stolen form one of the complainants or a combination.

<u>Id</u>. This instruction resembles the erroneous prosecutorial instructions in <u>Francis</u>, <u>Ngo</u>, and <u>Stuhler</u>, because it allows six jurors to find the appellant appropriated

form the Aniols and six to find he appropriated form the Allens resulting in a less than unanimous verdict on all the substantive elements of the offense.

The harm was exasperated by the improper qualification of Juror Number One. Venire-person Number Three sat as Juror Number One in this case. C.R. pgs. 595-600. After being improperly qualified by trial counsel for the State, Juror Number One admitted that she would render a guilty verdict in a split decision scenario. R.R. V. 4 pgs. 13-15.

In closing argument trial counsel for the State again inaccurately instructed the jury that as long they found that "one complainant was out over $ 200,000" they could render a guilty verdict without reference to the requirement of unanimity on that fact. R.R. V. 9 pgs. 60-61. Both inaccurate instructions by trial counsel for the State were never corrected causing the appellant some harm. Kent, 447 S.W.3d at 423, See Ngo, 175 S.W.3d at 751-52(uncorrected erroneous unanimity argument contributed to egregious harm).

B. The evidence at trial was contested

Appellee contends there was no harm in this matter because the appellant did not challenge the "verity of the individual transactions" or make a meaningful argument about the distinctions between the transactions. Appellee's Brief on Discretionary Review, pgs. 27-28, Kent, 447 S.W.3d at 423. However, the court below disagreed. Id. The appellant testified and denied the allegations of theft.

27

Id. at 412-13, 422. Further, there were at least two separate complainants. Although they shared one transaction, the evidence at trial adduced separate deposits form each complainant on separate and distinct occasions. R.R. V. 9 pg. 51. More importantly, Barbara Allen testified she was involved in separate real-estate deals with the appellant after the Aniols withdrew from the River Gardens deal. R.R. V. 6 pg. 81.

The State relied on this distinction in its closing argument. Acknowledging Ms. Allen conducted completely separate real-estate deals with the appellant, trial counsel for the State assured the jury that they could rely on these separate "hotel" transactions for conviction if they believed the "general release" absolved the appellant. Further, the lower court held that the evidence against the appellant for the Aniols and Allens varied. For instance, ". . . the Aniols were more careful about documenting their agreement with the appellant that any money would be held in escrow." Id. The State did not introduce similar evidence pertaining to the Allens. Id. In fact, the loan documents for the Allens were agreements with the Aniols for the $200,000 loan to "buy down points". "Thus, there was conflicting evidence about who owned this money— the Aniols or the Allens." Id. "Given that the State argued for a conviction based on the 'hotel' transaction with the Allens but the escrow documentation was stronger for the Aniols, the risk on non-unanimity was exacerbated." Id.

28

Because the lack of unanimity concerned "underlying discrete offenses that are component parts of an aggregate offense," the lower court found some harm. Id. at 424. As the lower court noted, this elemental nature increases the "likelihood that treating violations simply as alternative means, by permitting a jury to avoid discussion of the specific factual details of each violation, will cover up wide disagreement among the jurors about just what the defendant did, or did not, do." Id., quoting Richardson, 526 U.S. at 819. "[T]here is a significant risk that jurors, unless required to focus upon specific factual detail, will fail to do so, simply concluding from testimony, say, of bad reputation, that where there is smoke there must be fire." Kent, 447 S.W.3d at 424, quoting Richardson, 526 U.S. at 819. As noted by the court below, trial counsel for the State in this matter introduced extraneous offense evidence of the appellant's alleged appropriations from other alleged victims that occurred after the transactions involving the Aniols and Allens. Kent, 447 S.W.3d at 424.

C. Appellee's reliance on distant boilerplate language should be rejected

Appellee claims the presence of the word "unanimous" on page 610 of the jury charge cures any error and resulting harm in the application paragraph on page 607. Appellee's Brief on Discretionary Review, pg. 26, C.R. pgs. 604-612. The court in Ngo identified the same boilerplate language in the section of the jury charge dealing with the selection of the foreman. Ngo, 175 S.W.3d at 744-45.

29

However, the court found that such distant language did not cure the error of the disjunctive application paragraph in that case noting that the general language did not require " . . . every juror agree[] that the defendant committed the same, single, specific criminal act." Id. at 745. Further, in this particular matter the boilerplate instruction compounded the harm that resulted from the State's argument that the ". . . jurors need not unanimously agree about from whom appellant stole over $200,000." Kent, 447 S.W.3d at 424.

## D. The evidence at trial was of a complicated commercial real-estate transaction

Appellee claims the record contains overwhelming evidence of guilt in this matter. Appellee's Brief on Discretionary Review, pg. 27. However the record reveals that the evidence at trial was of a complicated commercial real-estate transaction. This transaction was made more difficult because both the buyer and the seller wanted to employ non-traditional methods to close the deal.

The evidence at trial adduced that both the Anoils and the Allens signed a settlement agreement waiving their ability to seek civil damages from the appellant for the related real-estate transactions. R.R. V. 19 Def. Exs. 1 and 2. This raises a motive for the Aniols and Allens testimony. The settlement agreements show that both the Aniols and Allens agreed to waive restitution from the appellant civilly. Despite this binding waiver, they then sought restitution for the failed transactions

30

from the appellant after he was found guilty. R.R. V. 10 pgs. 20-21. This contradiction exposes a financial motive for the Aniols and Allens testimony.

Also, the Aniols desired a quick and profitable sale because of their detreating health circumstances. R.R. V. 5 pgs. 17-18, 52-53. The Allens knew that a traditional bank or financing institution would be reluctant to help them make such a large purchase because they needed one hundred percent financing. R.R. V. 6 pg. 45, 48. Despite the fact that the Allens were an inappropriate buyer, both parties desired to force the deal to completion. This is evidenced by the fact that the Aniols transferred $200,000 to the Allens so that Allens could "buy down points" on the deal, or in other words falsely show they were a worthy buyer. R.R. V. 5 pgs. 24-25, 43-44, 46, 48-49, 86-87, R.R. V. 6 pgs. 55-57. This type of loan happened again in December of 2004 when the Aniols loaned Barbra Allen another $150,000 to deposit with the appellant. Kent, 447 S.W.3d at 412.

Mrs. Allen's testimony also exhibits the questionable real-estate tactics employed in this case. Mrs. Allen admitted to making the initial $200,000 deposit with appellant in order to "buy down points." R.R. V. 6 pgs. 55-57. This was a misrepresentation of her credit ability because the funds were not her's but came from the seller in the transaction. Ms. Allen testified that although she believed the Aniols' deposits were returned, when they called her to inquire about the matter she refused to help them and only referred them to the appellant for answers. R.R.

31

V. 6 pg. 82. Despite testifying she was ultimately unhappy with the work of the appellant, the evidence showed that the Allens continued to work with the appellant after the Riverside transaction fell through and after receiving the above stated inquiry from the Aniols. R.R. V. 6 pgs. 80- 83.

Similarly, although they ultimately complained about the work of the appellant on the Riverside deal, the Aniols admitted to paying Ms. Cochran $150,000 thousand dollar brokerage fee for introducing them to the appellant. R.R. V. 5 pg. 28. The brokerage fee was for a $19.5 million dollar commercial real-estate transaction. The evidence showed that the Aniols did not dispute this fee. Id. The payment and acquiescence to this related brokerage fee shows that the Aniols recognized and accepted the fact that fees for services were part of the Riverside transaction. The fee also proves that the Aniols thought a large fee was reasonable for associated services in the transaction.

Ms. Aniol admitted to the work done by the appellant to further the River Gardens sale. Kent, 447 S.W.3d at 413. She acknowledged "constant phone calls" with the appellant during the pendency of the River Gardens transaction. Id. Ms. Aniol testified to having daily conversations and daily fax communication with the appellant during this time. Id. She admitted to sending the appellant thousands of documents and receiving 900 faxes from the appellant. Id. While acknowledging these types of documents were typical in underwriting she admitted that she was

32

not sure of "how appellant was going to be paid." <u>Id</u>. Ms. Aniol also testified that she "had lawyers reviewing the transaction beginning in the fall of 2004." <u>Id</u>.

The evidence at trial in this case was not overwhelming for guilt but instead was inconsistent and questionable.

## **<u>Prayer</u>**

Appellant prays this Court affirm the lower court's opinion to reverse the trial courts' judgment, including its restitution order, and remand to the district court for a new trial.

Respectfully submitted,

_____/S/ James F. Pons_____

James F. Pons
TXSBN 24041707
10900 N.W. Fwy., Ste. 230
Houston, TX 77092
Ph (832) 372 8138
Fax (713)869 8330

## **<u>Certificate of Service and Compliance</u>**

This is to certify that: (a) the word count function of the computer program used to prepare this document reports that there are 7,905 words in the relevant

sections and; (b) a copy of the foregoing instrument will be served on the

following via email to:

Eric Kugler
ADA
1201 Franklin, Suite 600
Houston, TX 77002
kugler_eric@dao.hctx.net

Lisa McMinn
State Prosecuting Attorney
Lisa_McMinn@SPA.texas.gov


     /S/ James F. Pons
James F. Pons
TXSBN 24041707
10900 N.W. Fwy., Ste. 230
Houston, TX 77092
Ph (832) 372 8138
Fax (713)869 8330